Curia, per Frost, j.
The owners of steamboats engaged in the carrying trade are liable as common carriers. The defendant did not sign a bill of lading, nor by notice or special agreement limit or except any of the liabilities which, by common law were imposed on him, by his undertaking to carry the plaintiff’s cotton. A common carrier is bound to carry safely and deliver the goods entrusted to him ; and can only exempt himself from liability for any loss or damage by proof that it resulted from the act of God, or of public enemies. In all cases of loss, the onus probandi is on the carrier; for the law imposes the obligation of safety upon him. It is sufficient for the plaintiff’s recovery to prove that the goods were received by the carrier, and.that he has failed to deliver them, according to his undertaking. If the carrier cannot show that thé loss or destruction of the goods has occurred by one of, the excepted perils, he must pay the loss. Proof of negligence is unnecessary to charge him, and proof of diligence is insufficient to excuse him. He is held liable as ah insurer.
Responsibilities, seemingly so rigorous, are dictated by public policy. A common carrier is treated as one exercising a public employment; and duties, beyond his mere contract as a bailee, are imposed on him for the public security. The goods to be carried must be entrusted exclusively to his servants and agents, who, in the carrying, are beyond the reach of the owner’s vigilance and the observation of disinterested witnesses. It is scarcely possible for the owner to prove negligence, misconduct, or dishonesty. The only witnesses he can offer for this purpose must generally inculpate themselves, if they testify in his favor. Self-interest, the natural reluctance to acknowledge culpable negligence or misconduct, and still more the pecuniary loss, or penalties which may follow the confession, all conspire to secure for *124 the carrier the exculpatory testimony of all who can know anything of the causes which produced the loss. The car-cannot complain that the law is severe, when, if he chooses, he may prevent its operation on him. He may except, by notice or stipulation, every risk that is incident to his undertaking to carry. If he makes no exceptions, he obtains a higher freight by assuming those risks against which the owner would, otherwise, pay the cost of insurance and abate it from the rate of freight. When a loss occurs, there is not much reason or justice in the carrier’s complaint that he is required to make the indemnity for which he has received the premium.
The plaintiff’s cotton was burnt, together with the boat. Fire is not an excepted peril. A loss by fire, which, occurring in another boat renders the carrier liable, will render him equally liable if he carries in a steamboat. But it is argued that though fire, originating from other causes, may not excuse the carrier, yet, if it proceeds from the bursting of the boiler, it should be referred to the act of God, or inevitable accident. The well-settled legal import of these phrases limits inevitable accidents to such as may be produced by physical causes which are irresistible, which human foresight and prudence cannot anticipate, nor human skill and diligence prevent; such as loss by lightning, storms, inundations and earthquakes, and the unknown dangers to navigation, which are suddenly produced by their violence. The bursting of a boiler cannot be classed with these convulsions of nature, nor be referred to that class of accidents which human foresight cannot anticipate, nor human skill and diligence avert. The boiler of a steam engine is an implement of mechanical power, in common use. The ingenuity which applied steam to the purposes of manufactures and navigation, provided also the means for its employment with safety. Terrific accidents are the inevitable and too frequent consequence of inattention to these means, or of wilful and rash counteraction of one or more of them. A boiler may be burst by the production of a pressure of steam greater than it was constructed to resist, or greater than, in its actual condition and state of repair, it may be capable of resisting. Certain fixtures are provided for the escape of any dangerous excess of steam, and other fixtures are provided to regulate its production, and to give warning of a deficiency of water in the boiler, which is the most frequent cause of disaster. Intelligent witnesses have testified that the safeguards are sufficient to prevent an explosion, if properly attended to. A loss, then, which results from an excess of steam must be attributed to misconduct or negligence. An explosion may also occur if the boiler be defective in its construction, or if its strength be impaired by use, so that it cannot resist the *125 pressure of steam which, in its careful 'and prudent employment, may be necessary for the power it is required to exert. The carrier is bound to provide a safe boiler, and keep it in good repair, and supply its place by a new one whén its strength is impaired by use ; and he is also bound to employ servants and mechanics who shall possess the necessary vigilance and skill to observe the condition of the boiler, at all times, and form a correct opinion of its strength and safety. An explosion can only happen from excess of steam, or the insufficiency of the boiler, and therefore may be prevented by proper vigilance and skill. It does not weaken this conclusion that, frequent as such disasters are, they are always represented to be unaccountable; that is, they are not accounted for. But that is readily explained. The cause of the accident is left in obscurity, either by the destruction of the only witnesses who might explain it, or by testimony which negatives every possible cause for its occurrence. The persons who alone can know, and who are responsible for what caused it, cannot have the hardihood to confess negligence or misconduct, which must expose them to criminal liability and the more dreaded imprecations of bereaved relatives and friends, and of the whole community, shocked by the tragical consequences of an explosion.
But if it be admitted that, in any case, the'bursting of a boiler has proceeded from causes beyond human skill and vigilance, still the loss cannot be referred to the act of God. The steam engine is of human invention, construction and employment. Whoever uses this mechanical power must be responsible for its safety. If it be perilous, the more imperative must be such obligation. The carrier by steam power is, like any, other carrier, liable for a loss which may originate from spontaneous combustion, Or which may be extended to his vessel from the shore, when it may be impossible to remove the vessel from.danger. These are losses apparently beyond prevention, at least as much as any possible accident to a boiler. Yet for them the carrier is liable; because, though the peril, when encountered, could not be resisted, it may possibly have been foreseen and avoided. Fire is a risk incident to a carrier’s employment. No distinction can be made in regard to the causes from which the fire may originate. If such distinction were admitted, it could, with less reason, be applied in favor of the carrier for losses occurring by the propelling power of the boat, than for other losses by fire, more certainly beyond his power to prevent. It is not unjust nor harsh that he should be held liable for losses, incident to -the means of transportation he employs, on the •same principle and to the same extent as other carriers, using .a different motive power. If a vessel, founders at,sea, without stress of weather, the presumption is that it was not seaworthy ; and, if the causes of an explosion are left in obscu *126 rity, the presumption must be, that the boiler was insufficient, or t^at it was exploded through misconduct or negligence.
The Court is of opinion that the testimony, the admission 0f whieh is excepted to, in the first and second grounds of appeal, should not have been received. If improper testimony be admitted, which could have any effect on the verdict, the Court will verv rarely refuse a new trial. But, in this case, the exceptionable testimony was wholly immaterial. It tended to prove a want of due diligence by the defendant. All the evidence, both- of plainiiff and defendant, on that subject, may be struck out; and it may be assumed that the defendant was guilty of no negligence, for the defendant is liable to pay for the destruction of the plaintiff’s cotton, with-°.ut any regard to his diligence or negligence; and that habi-hty rests on evidence which was not disputed.
The motion is dismissed.
Evans, Wardlaw and Withers, JJ., concurred.

Motion refused.